# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TONY FORE,**

                **Plaintiff,**

         **v.**                                               **Case No. 09-C-242**

**LAKESIDE BUSES OF WISCONSIN, INC.,**

                **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. PROCEDURAL HISTORY

On March 3, 2009, Tony Fore ("Fore"), proceeding pro se, filed a complaint against Lakeside Buses of Wisconsin, Inc. ("Lakeside"), his former employer, alleging that he was terminated from his employment because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. Accompanying his complaint was a motion to proceed in forma pauperis, (Docket No. 2), and a motion for the appointment of counsel, (Docket No. 3).

On March 5, 2009, this court granted Fore's motion to proceed in forma pauperis and denied without prejudice Fore's request for the appointment of counsel. (Docket No. 4.) In the court's order denying Fore's request for appointed counsel without prejudice, the court stated that it would reconsider Fore's request if after making an effort to obtain counsel, he was unsuccessful. On April 9, 2009, Fore filed a renewed request for appointed counsel.

On May 7, 2009, the court granted Fore's request for an attorney and appointed Attorney Jerold V. Fennell to represent Fore. Despite the appointment and appearance by counsel, Fore continued to

file documents pro se. The court, on July 22, 2009, entered an order striking Fore's pro se documents and instructed Fore that he must proceed either pro se or through counsel; the court would not accept hybrid representation.

Fore subsequently chose to proceed pro se, and August 25, 2009, he filed a motion requesting that Jerold Fennell be removed as his attorney, and stating that he wished to proceed pro se. (Docket No. 27.) Although Attorney Fennell is an experienced attorney, Fore apparently disagreed with counsel's strategy as to how to proceed in this case. The court recognized Fore's right to proceed pro se and granted Fore's motion, relieving Attorney Fennell from further representation of Fore.

Fore filed a motion to amend his complaint, which the court denied, noting that it did not vary substantively from the current complaint and thus permitting an amendment would be inefficient because it would needlessly require the defendant to submit an answer. (Docket No. 32.)

Currently pending before the court is the defendant's motion for summary judgment. (Docket Nos. 36, 37, 38, 39, 40.) Fore has responded, (Docket Nos. 42, 43, 44, 45), and the defendant has replied, (Docket No. 47, 48, 49). The pleadings on the defendant's motion are closed and the matter is ready for resolution.

## II. FACTS

Fore, who is African-American, was employed by the defendant as a school bus driver. (Docket No. 38, ¶¶10, 13-15.) In May of 2007, Lakeside had 288 employees, and 269 or about 93% of its employees were African American; this ratio was similar throughout Fore's employment.

On June 8, 2006, Vice President of Lakeside Paul Kolo ("Kolo"), was in the area of 76th Street and Ruby Avenue in Milwaukee as part of an effort to monitor the conduct of Lakeside bus drivers in response to certain community complaints. (Docket No. 38, ¶¶31-33.) Shortly before 5:00 p.m., Kolo was returning to Lakeside's terminal when he observed a Lakeside school bus traveling eastbound on

Hampton Avenue and then turn north on 76th Street. (Docket No. 38, ¶¶34-35.) Kolo followed the bus, observed that the bus made lane changes without signaling, and Kolo found it necessary to travel more than 46 miles per hour in order to keep up with the bus in an area where the speed limit was posted to be either 30 or 35 miles per hour. (Docket No. 38 at ¶¶39-42.) Kolo identified the bus as bus number 9772 and contacted Lakeside dispatch who informed him the Fore was driving bus number 9772. (Docket No. 38 at ¶¶37, 43-44.) Fore contends that he was not on 76th Street that day. (Docket No. 45 at ¶5.)

Upon returning to Lakeside, Kolo went to the Personnel Department to complete a Driver Observation Report where he met with Mary Dotson ("Dotson"), Lakeside's Director of Safety and Personnel. (Docket No. 38 at ¶¶6-9, 45.) Dotson, who is African-American, informed Kolo that this was not Fore's first safety related incident. (Docket No. 38 at ¶¶12, 47-48.) Dotson presented Kolo with Fore's personnel file, which indicated that Fore's unsafe driving had been documented numerous times in the past and that Fore had been suspended a number of times. (Docket No. 38 at ¶¶49-50.)

On September 3, 2004, Fore was suspended once for breaking a side view mirror off of a bus and not immediately reporting an accident. (Docket No. 45 at ¶14.) On November 5, 2004, Fore received a written warning for attendance. (Docket No. 45 at ¶14.) On February 17, 2005, Fore was suspended again for running his route early. (Docket No. 45 at ¶14.) On May 11, 2005, Fore received a "pending suspension," but the matter was resolved before he was actually suspended. (Docket No. 45 at ¶14.) Fore was then suspended on May 9, 2006 for speeding. (Docket No. 45 at ¶14.) Each of these suspensions warned that any further violations could result in termination. (Docket No. 45 at ¶14.)

Dotson told Kolo that she believed Fore should be terminated and Kolo did not disagree. (Docket No. 38 at ¶¶51-52.) Fore contends that Kolo made the decision to terminate Fore and instructed

3

Dotson to terminate him. (Docket No. 42 at 11, 13.) Dotson drafted the letter terminating Fore, indicating that he was being terminated for "overall poor work history." (Docket No. 38 at ¶¶53-54.)

**III. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**IV. ANALYSIS**

"Title VII provides that 'it shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . .' 42 U.S.C. § 2000e2(a)(1)." Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1035 (7th Cir. 1999) (citing Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 376 (7th Cir. 1998). A plaintiff alleging race discrimination in violation of Title VII has two ways in which he may avoid summary judgment. Brewer v. Bd. of Trs., 479 F.3d 908, 915 (7th Cir. 2007). The first is the burden shifting method, sometimes referred to as the indirect method of proof or the McDonnell Douglas method in reference to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Id. Under this method, the plaintiff must present a prima facie case of discrimination by demonstrating that (1) he was a member of a protected class; (2) he was qualified for the position and meeting the employers legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly-situated non-class members were treated more favorably than he. Brewer, 479 F.3d at 915.

The other way a plaintiff may avoid summary judgment is by way of the direct method of proof under which the plaintiff must present a "'convincing mosaic' of direct or circumstantial evidence that could permit a reasonable jury to conclude that the employer acted with discriminatory intent." Id.

Fore contends that he has presented a prima facie case utilizing the indirect method of proof. (Docket No. 42 at 2.) Fore alleges that the proffered reasons for his termination were pretextual. Specifically, Fore contends that despite the fact that he received multiple "final warnings" over an extended period of time, he was not terminated. Fore argues that if he continued to violate company rules, but was simply given another "final warning," these final warnings have, in effect, expired and cannot be considered in his termination decision or in determining whether he was meeting the legitimate expectations of his employer. (Docket No. 45 at ¶14; 42 at 3-5.) Thus, in Fore's mind,

5

because he was not fired in the past when he received a final warning, for Lakeside to consider his past discipline at the time he was terminated means its decision is pretextual. (Docket No. 45 at ¶14; 42 at 3-5.)

In Wisconsin, at-will employees such as Fore, may be terminated for any reason so long as the reason is not one of the few statutorily prohibited bases and the reason is not contrary to public policy. Bammert v. Don's Super Valu, 2002 WI 85 ¶¶8-9, n.3, 254 Wis. 2d 347, 646 N.W.2d 365 (2002). In fact, an at-will employee can be fired for absolutely no reason and the employee has no legal remedy.

For Title VII, Fore has demonstrated that he is a member of a protected class and that he suffered an adverse employment consequence. However, Fore has failed to establish a prima facie case with respect to the second and fourth elements under the McDonnell Douglas burden shifting framework.

The court concludes that Fore was clearly not meeting the legitimate expectations of his employer. He had a long history of discipline problems, was repeatedly suspended, and informed numerous times that any further infractions could result in his termination. Fore's contention that the company's decision not to fire him after receiving "final warnings" made those warnings null and void and unable to be considered in future discipline decisions (Docket No. 42 at 3-5), has no basis in fact or law. The notices never said that a subsequent violation *will* result in termination; rather, the notices simply warned that termination was a possibility. Lakeside's discipline forms are very clear. They state: "You should be aware that any further violations could result in your termination. Also be advised that all violations are cumulative and all are considered when terminating employees." (Docket No. 42 at 34, 38, 40, 41.) An employer who gives an employee notice that future violations *could* result in termination, (Docket No. 42 at 20, 34, 37, 38, 39, 40, 41), is not *required* to terminate the employee

upon a subsequent infraction. The June 8, 2006 incident was the proverbial straw that broke the camel's back and Fore's poor work history culminated with his termination.

Fore contends that he does not need to demonstrate that he was meeting Lakeside's expectations because those expectations were in themselves a pretext for discrimination. (Docket No. 42 at 2.) In this regard, the Seventh Circuit has recognized that under certain limited circumstances, a plaintiff who meets the other elements of a prima facie case need not demonstrate that he met the employer's expectations if he can demonstrate that those expectations were actually a pretext for discrimination. See Brummett v. Lee Enters., 284 F.3d 742, 745 (7th Cir. 2002) (citing Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1404 (7th Cir. 1996); Vakharia v. Swedish Covenant Hospital, 190 F.3d 799, 807 (7th Cir. 1999)). But Fore fails to establish that this holding applies to the facts of this case.

Fore has utterly failed to show that Lakeside's expectations were a pretext for discrimination. Fore was terminated, in part, for failing to report an accident, (Docket No. 42 at 37), poor attendance, (Docket No. 42 at 20, 39), and speeding, (Docket No. 42 at 19- 23). These are all facially legitimate employment expectations for a school bus driver. Courts "will not second-guess an employer's policies that are facially legitimate." Brummett, 284 F.3d at 745 (quoting Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1035 (7th Cir. 1999)). Simply contending that such facially legitimate expectations are pretextual is not persuasive.

In addition, Fore has also failed to satisfy the fourth element of a prima facie case. He has not produced any evidence that Lakeside treated other similarly situated employees outside of the protected class more favorably. Fore admits he has not satisfied this element, but he refers to Seventh Circuit case law in an attempt to avoid this element. He cites the case of Leffel v. Valley Fin. Servs., 113 F.3d 787, 793-94 (7th Cir. 1997), in which the Seventh Circuit recognized that it is not absolutely essential that a terminated employee demonstrate that he was replaced by a person outside the plaintiff's class.

7

The Seventh Circuit did not abandon the similarly situated element, as is evidenced by the fact that the court continues to apply it many recent cases. See, e.g., Brewer, 479 F.3d at 916. Rather, the court has simply held that in certain limited cases, the unique circumstances of a plaintiff's employment might make proof of disparate treatment difficult to establish. See Leffel, 113 F.3d at 794. For example, an executive who is the only one in her position might be unable to point to a similarly situated person outside her class who was treated differently, and thus will have to present a prima facie case through other means, such as demonstrating that there was a profound reversal in how her employer treated her upon her disclosing she had a disability. Id.

Fore may have a difficult time identifying a person similarly situated and outside his class, but not for the uniqueness of his position, as was the case in Leffel. Here, Lakeside's workforce is over 90% African-American. Therefore, it may be difficult to find someone outside the plaintiff's class who was treated better. However, in this case, the make up of the defendant's work force operates against the existence of racial animus being the motivation for Fore's termination. Although an inference of discrimination can be raised when an employer which is uncharacteristically racially homogenous terminates the single employee who is not a member of that racial uniformity, an inverse inference may also be raised. Here, where the employee is alleging discrimination as a member of the race that constitutes the overwhelming majority of the employer's workforce, this fact may support a conclusion that the employer's motivations were not based on racial animus.

But more importantly, even if the court were to find that Fore should be excused from satisfying this element of a prima facie case, Leffel does not hold that a litigant can simply prove a prima facie case by proving the first three elements under the burden shifting method. Under no circumstances does simply satisfying the first three elements automatically constitute a prima facie case. Rather, Leffel simply permits a litigant in certain cases the flexibility in proving a prima facie case; essentially, a

8

litigant might be permitted to substitute other evidence in lieu of the fourth element. Here, Fore simply seeks to be excused from being required to prove anything other than the first three, but he does not offer any additional evidence in place of the fourth.

The only potential evidence presented that might be construed as a substitute for the similarly situated element is the allegation that three weeks before his termination Kolo walked past Fore and said, "It's hard not to hate Tony." (Docket No. 42 at 9-10.) Because Kolo is Caucasian and Fore is African-American, Fore contends that the only possible explanation for Kolo's professed hatred toward Fore is Fore's race. (Docket No. 42 at 10.) Although Fore never indicates that he intends to proceed by way of the direct method of proof, for the sake of completeness the court shall briefly address whether this comment, when viewed in light of all other evidence Fore has presented, could present a viable claim under the direct method of proof.

As a preliminary matter, Kolo denies ever making this statement to Fore. (Docket No. 39-1 at 27.) But even accepting that Kolo did make this statement, no reasonable jury could conclude that that this one statement reflected a racial animus towards Fore. There are many reasons that have nothing to do with race why one person may dislike another, such as personality, work performance, or countless other reasons. On its face, the comment made by Kolo is race neutral. To conclude that Kolo must have been referring to a dislike of Fore based on his race, rather than any number of other characteristics, is certainly not warranted.

**V. CONCLUSION**

Fore failed to present sufficient evidence to demonstrate that he was meeting the legitimate expectations of his employer and that another employee who was similarly situated but outside his class was treated differently. Thus, Fore has failed to satisfy the second and fourth elements of a prima facie

9

case of racial discrimination for the indirect method of proof. Nor has Fore presented any evidence to sustain the direct method. Accordingly, the court concludes that the defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment, (Docket No. 36), is **granted**. The Clerk shall enter judgment dismissing the complaint and this action without costs to either party.

Dated at Milwaukee, Wisconsin this 23rd day of December, 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge